UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

ROBERT L. SWINTON,

          Defendant.
_____

**DECISION AND ORDER**

6:15-CR-06055-EAW

## **INTRODUCTION**

Defendant Robert L. Swinton, Jr. ("Defendant"), appearing *pro se* with standby counsel, stands accused by way of a five-count Indictment, returned April 21, 2015, as follows:

> Count 1: Conspiracy to manufacture and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846;
>
> Count 2: Possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2;
>
> Count 3: Use of premises to manufacture, distribute, and use controlled substances, in violation of 21 U.S.C. § 856(a)(1), and 18 U.S.C. § 2;
>
> Count 4: Possession of firearms in furtherance of drug trafficking crimes (the offenses charged in Counts 1 through 3), in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; and
>
> Count 5: Possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

(Dkt. 53). The Court referred all pre-trial matters to Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Dkt. 54).

Defendant has filed both counseled and *pro se* objections to the Magistrate Judge's two Reports and Recommendations (Dkt. 78; Dkt. 94) ("R&Rs") that recommended denial of Defendant's various suppression motions. (Dkt. 59). After a *de novo* review, including a careful review of the submissions of the parties, the Court accepts and adopts the proposed findings and conclusions set forth in the R&Rs, for the reasons set forth therein. However, with respect to Defendant's motion to suppress the evidence obtained from Defendant's cellular telephone, while the Court agrees with the Magistrate Judge's recommendation to deny Defendant's motion to suppress that evidence, this Court believes that, in addition to the reasoning that the search fell within the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1983), the plain language of the warrant authorized the search of the cellular telephone text messages and related content.

## **PROCEDURAL HISTORY**

On July 6, 2015, Defendant, through counsel, filed a pretrial motion seeking various forms of relief. (Dkt. 59). Among other requests, Defendant sought a *Franks* hearing and moved to suppress tangible evidence (including the cellular telephone content), statements he made during and subsequent to the execution of a search warrant on October 16, 2012, and recorded telephone calls he made from the Monroe County Jail. (*Id.*). On August 3, 2015, the Government filed a response in opposition. (Dkt. 61). After additional filings by both parties (Dkt. 63; Dkt. 67; Dkt. 70), and appearances before Judge Payson (Dkt. 62; Dkt. 65; Dkt. 66; Dkt. 68), Judge Payson conducted an evidentiary hearing on December 1, 2015, at which Rochester Police Sergeant Edward

McDonald testified about Defendant's statements made during the execution of a search warrant at 562 Maple Street, and Rochester Police Investigator Myron Moses testified about Defendant's statements made several hours later at the Public Safety Building. (Dkt. 71; Dkt. 72). The parties filed post-hearing submissions before Judge Payson. (Dkt. 75; Dkt. 76; Dkt. 77).

On February 10, 2016, Judge Payson issued a Report and Recommendation recommending that the Court deny Defendant's request for a *Franks* hearing and deny his motions to suppress tangible evidence, statements made during and subsequent to the execution of the search warrant, and recorded telephone calls he made from the Monroe County Jail ("February 2016 R&R"). (Dkt. 78 at 30). However, Judge Payson reserved decision on Defendant's motion to suppress certain evidence seized from the cellular telephone pending an evidentiary hearing. (*Id.*).

An evidentiary hearing was conducted before Judge Payson on April 4, 2016, at which Commander Joseph Morabito, who was employed by the Rochester Police Department and extracted the text messages from Defendant's cellular telephone, testified about, *inter alia*, the basis for his belief that the search warrant authorized the extraction. (Dkt. 83; Dkt. 84). The parties later submitted post-hearing memoranda of law. (Dkt. 90; Dkt. 91).

On October 21, 2016, Judge Payson issued a second Report and Recommendation recommending that the Court deny Defendant's motion to suppress evidence seized from the cellular telephone ("October 2016 R&R"), reasoning that the good faith exception applied even if the warrant's plain language did not authorize the search. (Dkt. 94).

On December 12, 2016, Defendant, through counsel, filed consolidated objections to the R&Rs. (Dkt. 101). On February 17, 2017, the Government filed a response to Defendant's consolidated objections. (Dkt. 107).

On or about March 3, 2017, this Court received documentation from Defendant requesting, among other things, to proceed *pro se*. On March 10, 2017, after conducting a colloquy with Defendant, the Court granted Defendant's request to proceed *pro se*. (Dkt. 115). On that same date, the Court arranged for the Clerk's Office to file the various written submissions received from Defendant, including the supplemental *pro se* objections to the R&Rs (Dkt. 112), an "Affidavit of Truth" (Dkt. 113), and an "Affidavit of Due Process Violations" (Dkt. 114). Defendant requested that the Court consider these additional submissions, and the Court permitted the Government an opportunity to respond. (Dkt. 116; Dkt. 117). On March 23, 2017, the Government filed a response to the additional *pro se* submissions. (Dkt. 118).

## DISCUSSION

A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Further, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) (citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999)))); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised."); *see also United States v. Raddatz*, 447 U.S. 667, 675-76, (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings).

The Court incorporates the recitation of the facts as provided in the R&Rs, and will recount them here only as necessary to explain the Court's ruling. After a *de novo* review, the Court agrees with all of the conclusions set forth in the R&Rs: Defendant's motion to suppress the statements made on October 16, 2012, should be denied; Defendant's motion to suppress the recorded telephone calls from Monroe County Jail should be denied; Defendant's request for a *Franks* hearing should be denied; and Defendant's motion to suppress tangible evidence, including the evidence seized from the

cellular telephone, should be denied. However, with respect to Defendant's motion to suppress the cellular telephone evidence, in addition to the October 2016 R&R's conclusion that the motion should be denied because of the good faith exception, this Court concludes that the search of the text messages and related content was authorized by the plain language of the warrant. Thus, based upon a *de novo* review, Defendant's motions are denied for the reasons set forth in the February 2016 R&R and the October 2016 R&R, but as discussed further below, this Court also concludes that the plain language of the warrant authorized the cellular telephone search.

## I. Motion to Suppress Cellular Telephone Evidence

Defendant, through counsel, objects to the Magistrate Judge's recommendation to deny his motion to suppress evidence seized from his cellular telephone. (Dkt. 101 at 2-7). In his motion papers, Defendant argued that the search warrant did not authorize the search and seizure of the contents of the cellular telephone. (*Id.*).

The warrant at issue authorized a search of the apartment at 562 Maple Street for the following items:

> Any evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense, written records, books and computer records tending to show sale and trafficking of Cocaine and money showing profits from the sale of Cocaine, safe deposit box records and keys, records, ledgers, notes or other writings reflecting deposit, withdrawal, investment, custody or location of money, real property, personal property or other financial transactions, records, ledgers notes or other writing reflecting ownership of said property, *records reflecting the names, addresses and telephone numbers of persons from whom Cocaine is purchased and sold, including but not limited to, address and telephone books, including those contained in cellular telephones* or Personal Data Assistants and telephone bills; all records ledgers, notes or other writings reflecting income earned and

reported to the Internal Revenue Service or other taxing agencies; residency and/or ownership of the described vehicle, including but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds and mortgages; photographs and video tapes that depict individuals involved in Cocaine violations and/or photographs to assist in helping identify drug traffickers and their associates including undeveloped rolls of film, memory cards and disposable cameras.

(Dkt. 59-2 at 1-2 (emphasis added)).

### A. Plain Language of Warrant

The Magistrate Judge concluded that the warrant plainly authorized the seizure of Defendant's cellular telephone and a search of the phone's address book or "contacts" information (Dkt. 78 at 28), but expressed skepticism with respect to the Government's argument that the plain language of the warrant authorized the search of "[c]ertain SMS (text) messages tending to show the sale and trafficking of cocaine, as well as the telephone numbers/contact information associated with those SMS messages. . . ." (*Id.* at 29). The Magistrate Judge concluded that the above-quoted italicized portion of the warrant did not encompass text messages, but rather "limit[ed] the search of cellular telephones to searches for address and telephone listings, such as those commonly found in the 'contacts' section of the phone.'" (Dkt. 94 at 5). The Magistrate Judge also expressed doubts concerning the merits of the Government's argument that the reference in the warrant to "computer records tending to show sale and trafficking of Cocaine" would have encompassed text messages on a cellular telephone. (Dkt. 78 at 29).

This Court readily agrees with the Magistrate Judge that the language of the search warrant is "unwieldly" and contains "somewhat confounding grammar." (*Id.* at 26). Yet, in this Court's view, the warrant's grammar failures do not translate to a failure to meet

the Fourth Amendment's particularity standard. Rather, the plain language of the warrant encompassed the text messages contained on the cellular telephone (including the telephone numbers/contact information associated with those text messages).

The Fourth Amendment requires that a warrant must state with particularity the items to be searched and seized. *See* U.S. Const. Amend. IV. "This particularity requirement protects individuals from 'exploratory rummaging' not supported by probable cause." *United States v. Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)). "In determining the permissible scope of a search that has been authorized by a search warrant [the Court] must look to the place that the magistrate judge who issued the warrant intended to be searched and not to the place that the police intended to search when they applied for the warrant." *Id.* (citation and alteration omitted). "[T]he warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). However, while sufficient particularity is required, the warrant "need not describe the items to be seized in such detail as to eliminate the executing officer's discretion completely." *United States v. Lustyik*, 57 F. Supp. 3d 213, 227 (S.D.N.Y. 2014) ("[A] warrant's description of the items to be seized need only be 'sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.'" (quoting *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000)). The Court looks "directly to the text of the search warrant to determine the permissible scope of an authorized search." *Bershchansky*, 788 F.3d at 111. Whether a warrant "is sufficiently

particular to pass constitutional scrutiny presents a question of law. . . ." *George*, 975 F.2d at 75.

In this Court's view, notwithstanding the warrant's poor grammar and "unwieldy" language, the search for and seizure of Defendant's text messages was authorized by the clause of the warrant ordering the search and seizure of "*records* reflecting the names, addresses and telephone numbers of persons from whom Cocaine is purchased and sold, including but not limited to, address and telephone books, *including those contained in cellular telephones* or Personal Data Assistants and telephone bills." (Dkt. 59-2 at 1-2 (emphasis added)). Although text messages are not expressly referenced in that language, they plainly fall within the scope of "records" that are "contained in a cellular telephone." Indeed, it would be unlikely that an examiner could ascertain whether a contact contained on a cellular telephone was associated with a person from whom cocaine is purchased and sold—which plainly fell within the scope of the warrant— without reviewing the substance of the communications involving the person, as reflected by a text message. Moreover, the identifying information contained within a text message (such as telephone numbers and/or contact information) would fall within the scope of the warrant even if not specifically listed in the phone's contact section, to the same extent as a telephone bill (specifically referenced in the warrant) reflecting itemized information concerning calls made and received. *See United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011) (affirming district court's denial of motion to suppress and finding that cellular telephone was within the scope of warrant even though warrant's language did not reference phones directly, because "the cellular text messages, directory

and call logs of [the defendant's] cell phone searched by law enforcement officers can fairly be characterized as the functional equivalents of several items listed in . . . [the warrant], including correspondence, address books and telephone directories"); *United States v. Ramsey*, No. 1:12-cr-00310-3, 2013 WL 6388518, at *7 (M.D. Pa. Dec. 5, 2013) (cellular telephones fell within scope of warrant authorizing seizure of drug paraphernalia and documentary evidence associated with trafficking of controlled substances).

This conclusion is only further buttressed by the fact that the introductory phrase of the warrant authorizes the search and seizure of "[a]ny evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense," as well as the fact that the warrant authorizes the search and seizure of "computer records tending to show sale and trafficking of Cocaine. . . ." (Dkt. 59-2 at 1). *Cf. Riley v. California*, 134 S. Ct. 2473, 2489 (2014) (describing cellular telephones as "minicomputers that also happen to have the capacity to be used as a telephone"). In other words, the cellular telephone's text messages and related content fell within the scope of the plain language of the warrant.

B. Good Faith Exception

Even if the plain language of the warrant did not authorize the search of the contents of the cellular telephone, this Court agrees with the Magistrate Judge that the good faith exception applies. Following an evidentiary hearing and additional briefing, the October 2016 R&R considered whether the scope of the search may be upheld under *United States v. Leon*, 468 U.S. 897 (1983), because Commander Morabito, in good faith, believed that the warrant authorized him to search for and copy text messages from

Defendant's cellular telephone. (Dkt. 94 at 5). The October 2016 R&R credited the testimony of Commander Morabito and concluded that he "reasonably and in good faith construed the language of the warrant to authorize the search of [Defendant]'s cellular telephone for text messages." (*Id.* at 6). Commander Morabito's reasonable and good-faith construction of the warrant's language is not only supported by the Magistrate Judge's credibility determinations with respect to his testimony, but it is objectively supported by this Court's own conclusion as to the meaning of the warrant's language. In other words, while the warrant's language is less than ideal, and this Court and the Magistrate Judge may disagree as to the scope of the search authorized by the plain language of the warrant, that disagreement simply underscores the conclusion that an investigator, in good faith, could reasonably believe that the warrant authorized the search of the contents of the cellular telephone.

Thus, even if the plain language of the warrant did not authorize the search and seizure of the text messages, the Court concurs with the October 2016 R&R that Commander Morabito reasonably and in good faith interpreted the warrant to authorize the search of Defendant's cellular telephone for text messages, and as a result, the motion to suppress that evidence should be denied. (Dkt. 94 at 4-8). As discussed below, neither Defendant's counseled objections nor his *pro se* objections offer a persuasive reason to depart from the analysis and conclusions reached by the October 2016 R&R.

Through counsel, Defendant argues that the claim of good faith reliance on the language of the warrant is defeated by Commander Morabito's recognition that the language of the warrant did not describe the text messages and his admission that he

- 11 -

seized them regardless because they could be relevant to the investigation. (Dkt. 101 at 3). This characterization of Commander Morabito's testimony is misleading. Commander Morabito agreed that the search warrant did not expressly reference text messages, but explained that he believed that the search was authorized by the following clause of the warrant: "records reflecting the names, addresses and telephone numbers of persons from whom Cocaine is purchased and sold, including, but not limited to, address and telephone books, including those contained in cellular telephones." (Dkt. 84 at 18-21). Indeed, as discussed above, this Court also reached that same conclusion.

As a result, this Court accepts the Magistrate Judge's finding that Commander Morabito credibly testified that he believed the language of the warrant authorized the search for and seizure of Defendant's text messages (Dkt. 94 at 6) and agrees that a reasonable officer in Commander Morabito's position could interpret the warrant to authorize that search (*id.* at 7).

In his *pro se* objections, Defendant argues that the search warrant was overbroad and lacked probable cause, and as a result, reliance on it was not in good faith. (*See* Dkt. 112). He argues: "Investigator E. Barnabei . . . made a knowingly deficient affidavit to the issuing judge in this case, void of probable cause to warrant all of the requested items in his affidavit. Lieutenant Morabito also knew the warrant lacked probable cause before his extraction of the seized devices." (*Id.* at 3). The Court finds Defendant's *pro se* objections unpersuasive.

The issuance of a search warrant must be supported by probable cause. The determination of whether a search warrant satisfies the probable cause requirement is

based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Specifically,

> [i]n the warrant context, "[p]robable cause is a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000)).

In this case, the warrant application supports a finding of probable cause. The search warrant was issued based on a supporting affidavit by Rochester Police Department Investigator Edmond Bernabei, in which he described two controlled purchases allegedly made by a confidential informant ("CS-1") from the downstairs apartment at 562 Maple Street on September 28 and October 2, 2012. (Dkt. 59-2 at 3-7). The affidavit also described the reliability of CS-1: "Other officers of the Rochester Police Department and I know the Confidential Informant described in this affidavit. CS-1 has provided reliable information that has resulted in the arrest of suspects and the recovery of illegal narcotics and firearms." (*Id.* at 8). Moreover, as discussed above, the Court agrees with the October 2016 R&R that Commander Morabito relied in good faith on the search warrant in order to extract text messages from Defendant's cellular telephone. Accordingly, the Court is unpersuaded by Defendant's *pro se* objections.

For the foregoing reasons, as well as for the reasons articulated more fully in the R&Rs, Defendant's motion to suppress the evidence obtained from the cellular telephone is denied.

## II. Defendant's *Pro Se* Affidavits

This Court has also considered Defendant's *pro se* affidavits, entitled "Affidavit of Truth" (Dkt. 113) and "Affidavit of Due Process Violations" (Dkt. 114), and concludes that they do not provide any reason to depart from the Court's decision to deny Defendant's motions to suppress, nor do they provide any basis for granting any further relief to Defendant.

In his "Affidavit of Truth," Defendant appears to challenge the Court's jurisdiction over this case. (*See* Dkt. 113 at 4 ("The Defense objects to this arbitrarily enforced jurisdiction of the UNITED STATES OF AMERICA, and allege that the jurisdiction of this case lies only with the sovereign State of NEW YORK.")). He contends that the Court lacks personal jurisdiction over him as a defendant and subject matter jurisdiction over this case. (*Id.* at 5, 8). Defendant's arguments are meritless. This Court has personal jurisdiction over Defendant. *See United States v. Borbon*, 326 F. App'x 35, 37 (2d Cir. 2009) (citing *United States v. Williams*, 341 U.S. 58, 65 (1951) (noting that "[t]he District Court had jurisdiction of offenses against the laws of the United States . . . hence it had jurisdiction of . . . the persons charged") (citations omitted)). This Court also has subject matter jurisdiction over the prosecution of the federal crimes with which Defendant is charged. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."); *Borbon*, 326 F. App'x at 37 ("Because [the defendant] was charged with two federal conspiracy crimes, the district court had subject matter jurisdiction over the prosecution of these crimes pursuant to 18 U.S.C. § 3231.");

*see also United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453, 458-59 (W.D.N.Y. 2013) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the jurisdictional inquiry. District judges always have subject-matter jurisdiction based on any indictment purporting to charge a violation of federal criminal law." (alterations, quotations and citations omitted)).

In Defendant's "Affidavit of Due Process Violations," he appears to argue that the Speedy Trial Act has been violated and that the length of his pretrial detention has violated his rights under the Due Process Clause of the Fifth Amendment. (*See* Dkt. 114).

Upon review of the docket sheet in this case, the Court concludes that no violation of the Speedy Trial Act has occurred. Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Further, trial must begin within 70 days of the date on which the indictment or information is made public, or from the first appearance, whichever is later. *See id.* § 3161(c)(1). "If a defendant is not brought to trial within the time limit required . . . the . . . indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). However, 18 U.S.C. § 3161(h) identifies eight periods of delay that are to be excluded when computing the time within which a defendant's trial must commence. Here, Defendant points to the delay between

the filing of his motions in July 2015 (Dkt. 59) and the filing of the October 2016 R&R (Dkt. 94). (Dkt. 114 at 2-3). This does not give rise to a Speedy Trial Act violation because "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is specifically excluded. 18 U.S.C. § 3161(h)(1)(D).

The Court also concludes that Defendant's pretrial detention has not violated due process. "Pretrial detention constitutes punishment in violation of the Fifth Amendment's Due Process Clause when it is excessive in relation to non-punitive purposes of detention, such as preventing danger to the community or ensuring a defendant's presence at trial." *United States v. Hill*, 462 F. App'x 125, 126 (2d Cir. 2012) (alterations, quotations, and citations omitted). "To determine whether the length of pretrial detention has become unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, i.e., the evidence of risk of flight and dangerousness." *Id.* (quoting *United States v. El–Hage*, 213 F.3d 74, 79-80 (2d Cir. 2000)). "Due process sets no bright-line limit on the length of pretrial confinement. Thus, the length of detention will rarely by itself offend due process." *Id.* at 127 (alteration, quotations, and citation omitted). To determine if a due process violation has occurred, the court reviews "the totality of the circumstances." *Id.*

A review of the totality of circumstances in this case leads the Court to conclude that Defendant's pretrial detention has not violated due process. As to the first factor, the

length of Defendant's pretrial detention is considerable; he has been detained since his arrest in October 2012, over four years ago. (10/19/2012 Dkt. Entry). However, the remaining factors weigh against a finding that his pretrial detention offends due process. Nothing in the record shows that the Government has caused intentional or unwarranted delay. A significant portion of the delay is attributable to, *inter alia*, pretrial motion practice, plea negotiations (*e.g.*, Dkt. 13; Dkt. 18; Dkt. 22; Dkt. 65), changes in defense counsel (Dkt. 27; Dkt. 35; Dkt. 40; Dkt. 115), and adjournments to investigate a prior conviction in Florida (Dkt. 31; Dkt. 32; Dkt. 39; Dkt. 42; Dkt. 43; Dkt. 44; Dkt. 45; Dkt. 47; Dkt. 49; Dkt. 50; Dkt. 51). Finally, Defendant is charged with serious drug offenses and, according to the Government, faces a potential sentence of life imprisonment if convicted on Count 1 and Count 4 of the Indictment. (Dkt. 118 at 9). These circumstances conspire to defeat Defendant's argument that his pretrial detention is unconstitutional.

Accordingly, to the extent that Defendant requested any relief in his *pro se* affidavits, those requests are denied.

## CONCLUSION

Based upon this Court's *de novo* review, for the reasons set forth above and for the reasons set forth in the Reports and Recommendations (Dkt. 78; Dkt. 94), Defendant's suppression motions (Dkt. 59) are denied. Further, to the extent that Defendant requested any relief in his *pro se* affidavits (Dkt. 113; Dkt. 114), those requests are denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 24, 2017
        Rochester, New York