UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
FEB 20 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

      v.

ROBERT L. SWINTON,

          Defendant.

**DECISION AND ORDER**

6:15-CR-06055 EAW

Following a jury trial, Defendant Robert L. Swinton, Jr. ("Defendant"), who appeared *pro se* with standby counsel, was convicted of the following four offenses: (1) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; (2) use of premises to manufacture, distribute, and use controlled substances, in violation of 21 U.S.C. § 856(a)(1), and 18 U.S.C. § 2; (3) possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2; and (4) possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. 180; Dkt. 181).

On December 20, 2017, the Court sentenced Defendant to 270 months of imprisonment, followed by six years of supervised release. (Dkt. 217 at 3-4). The Court also ordered Defendant to pay a fine of $400 and a special assessment of $400. (*Id.* at 7). Judgment was entered on December 28, 2017. (*See* Dkt. 217). Defendant timely filed a notice of appeal on January 2, 2018. (Dkt. 218). Defendant's appeal remains pending. (*See* No. 18-101 (2d Cir. Jan. 2, 2018)).

- 1 -

Presently before the Court is a motion filed by Defendant for "Correction of The Record, pursuant to FRAP 10(e)(1)." (Dkt. 283). Specifically, Defendant contends that witness Danielle Bowen was asked certain questions and gave certain answers that are not reflected in the trial transcript. (*Id.* at 1). In addition, Defendant contends that "there are multiple jumbled 'misprints' that are capatolized [sic] lettering that makes no sense" and that the context of the conversations in trial were changed. (*Id.* at 1-2). In support of his motion, Defendant references the following pages of the trial transcript: pages 249-51, 361, 382, 396, 403, and 425-29. (*Id.* at 2). A copy of those pages from the trial transcript is attached to this Decision and Order.

Defendant makes his motion pursuant to Federal Rule of Appellate Procedure 10(e), which governs correction or modification of the record on appeal. Under Rule 10(e)(1), "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Fed. R. App. P. 10(e)(1). Under Rule 10(e)(2)(B), "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . . by the district court before or after the record has been forwarded[.]" Fed. R. App. P. 10(e)(2)(B). "[T]he movant in a Rule 10(e) motion 'must demonstrate that the evidence to be supplemented was before the lower court in the course of its proceedings leading to the judgment under review and was mistakenly omitted from the record.'" *Natofsky v. City of New York*, No. 14 Civ. 5498 (NRB), 2018 WL 741678, at *1 (S.D.N.Y.

- 2 -

Jan. 23, 2018) (quoting *Miro v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 01 CV 5196(HB), 2002 WL 31357702, at *1 (S.D.N.Y. Oct. 17, 2002)).

Pursuant to statute, a transcript certified by a qualified court reporter (like the trial transcript) is "deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753. It is the burden of the party seeking correction of the transcript to provide "clear evidence" of the claimed error. *See United States v. DiPietro*, No. 02 Cr. 1237(SWK), 2007 WL 2164262, at *2 (S.D.N.Y. July 25, 2007). A motion to correct and/or modify a transcript must do "far more than state that a transcript does not comport with the recollection of . . . the movant[.]" *United States v. Zichettello*, 208 F.3d 72, 97 n.11 (2d Cir. 2000). Here, Defendant contends that the transcript does not comport with his recollection of what was said during the relevant portions of the trial. However, Defendant has failed to overcome the statutory presumption of accuracy. Moreover, the Court has reviewed the referenced pages from the trial transcript and there do not appear to be any errors or, as Defendant claims, "jumbled misprints." Finally, the Court has conferred with the court reporter concerning the subject pages, and based upon the court reporter's review of the pages against her transcription notes, she has confirmed that the pages were accurately transcribed.

Accordingly, Defendant's Motion for "Correction of The Record, pursuant to FRAP 10(e)(1)" (Dkt. 283) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 20, 2019
Rochester, New York

- 3 -

US v. Swinton, Jr. - 15-CR-6055

9:32:49AM   1          THE COURT:  Yeah, it's August of 2012.

            2          MR. SWINTON:  Yes, ma'am this happened in August of

            3  2012.

            4          THE COURT:  What happened as far as you --

9:32:54AM   5          MR. SWINTON:  Basically she's -- okay, basically

            6  when they try to put me with somebody else, he was in a whole

            7  another state, that's the thing, Jit.

            8          THE COURT:  Who was?

            9          MR. SWINTON:  Jit.  This is where the Jit/David

9:33:07AM  10  Jones thing came at.  Jit was in a whole 'nother city with

           11  her.

           12          THE COURT:  In Pennsylvania?

           13          MR. SWINTON:  No, they wasn't in Pennsylvania.

           14  They was in Elmira.  They were driving to Pennsylvania to

9:33:18AM  15  take her to work.  She was working in an exotic bar.  So

           16  that's what happened.  When they drove her to work, they

           17  ended up getting into a high speed chase in my car.  Jit had

           18  taken my car a week or so earlier and basically we was having

           19  a discrepancy.  I couldn't get to Elmira to get my car back.

9:33:31AM  20  He took my car and ran off with her, so.

           21          THE COURT:  Was she arrested?

           22          MR. SWINTON:  Yes, she was arrested.

           23          MR. MOYNIHAN:  She was never convicted of anything.

           24          MR. SWINTON:  She was released.

9:33:41AM  25          MR. MOYNIHAN:  Right.

US v. Swinton, Jr. - 15-CR-6055

9:33:41AM 1          **MR. SWINTON:**  I was the one who had to pick her up

2       from the trooper barracks because I went down there and got

3       my car back.

4                **MR. MOYNIHAN:**  Well, I think -- I think his cousin

9:33:51AM 5       was the one who was convicted and ultimately went to prison

6       in Pennsylvania.

7                    **THE COURT:**  Whose cousin?

8                **MR. SWINTON:**  Technically he's not my cousin.

9                    **THE COURT:**  This is Jit?

9:34:02AM 10             **MR. MOYNIHAN:**  This is Jit.

11                   **THE COURT:**  That's her boyfriend, Jit, or was at

12      the time?

13             **MR. MOYNIHAN:**  It was her boyfriend.  I think she

14      testified that she was dating Jit.

9:34:09AM 15            **MR. SWINTON:**  Just for purposes, let's just say

16      that, yeah, yeah.

17                  **THE COURT:**  Well, it's her -- she had some kind of

18      relationship with him.

19             **MR. SWINTON:**  Yes.

9:34:19AM 20           **THE COURT:**  Well, I mean, are you trying, are you

21      trying to get into evidence whether or not she fled the

22      police?  I mean, she wasn't driving the motor vehicle, right?

23             **MR. SWINTON:**  Yeah, they still wasn't apprehended

24      till the next day.  They all ran out jumped out of the

9:34:35AM 25      vehicle and left my car --

US v. Swinton, Jr. - 15-CR-6055

9:34:35AM  1          **MR. MOYNIHAN:**  I think she did actually jump out of
         2   the vehicle.  I think she did exit vehicle and --
         3          **THE COURT:**  I mean, you know, I'm allowing it
         4   because I do think it goes to truthfulness.  The alleged
9:34:46AM  5   fleeing from Georgia, so this kind of fits with --
         6          **MR. MOYNIHAN:**  With that.
         7          **THE COURT:**  -- with that, as well.  So, I'm going
         8   to allow you some leeway on this, but if you want to object
         9   as we get into the questions, I may sustain an objection.
9:35:02AM 10          **MR. MOYNIHAN:**  Okay.
        11          **THE COURT:**  Because I don't want to get into too
        12   much of a collateral issue, you know.
        13          **MR. SWINTON:**  Okay.
        14          **THE COURT:**  But let's see where it goes, all right.
9:35:10AM 15          **MR. MOYNIHAN:**  Thank you, Judge.
        16          (Open court:)
        17          **THE COURT:**  All right.  I think Mr. Moynihan
        18   withdrew his objection to last question.  So maybe we could
        19   have it read.
9:35:53AM 20          **THE COURT REPORTER:**  What happened with the stop in
        21   Pennsylvania on the 15th?
        22          A    We got pulled over by the police and Jit tried
        23   to use his brother's name and it didn't work.  He pulled off
        24   from them.  We went around the corner, me and him and Cassie.
9:36:06AM 25   We ran from the police and he got in contact with you guys

McDonald - Cross - Swinton

12:23:56PM 1    he personally observed and the question was whether or not he

2    saw Jones.  He said no.  And he said, well, who's the first

3    person you saw.  He said, in sum and substance, you're the

4    first person I saw which that's not inconsistent with what's

12:24:09PM 5    in the report.

6            THE COURT:  So your objection is that it's not an

7    inconsistent statement?

8            MS. HARTFORD:  Correct.

9            THE COURT:  I overrule that objection.  It's within

12:24:19PM 10   the Court's discretion as to whether or not something's

11   inconsistent and, quite frankly, I think it is somewhat

12   inconsistent.  So, Exhibit 400 will come into evidence, just

13   to the extent, though, that it contains that one sentence.

14   The rest of that report can't come in.  So, before this is

12:24:38PM 15   published to the jury, we're going to have to redact and you

16   can get Mr. Tallon's assistance with that.  You can redact

17   any of the other narrative on it.

18           MR. SWINTON:  I can't read it into evidence, your

19   Honor?

12:24:50PM 20           THE COURT:  No, you can read -- it's in evidence

21   now, so you can ask him about this statement.

22           MR. SWINTON:  Okay.

23           MR. TALLON:  Judge, how would you like --

24           MR. MOYNIHAN:  Judge --

12:25:01PM 25           MR. TALLON:  -- it redacted?  Would you want the

Bernabei - Direct - Moynihan

12:49:07PM  1    secure it?

2         A    It is placed -- like the magazine and the

3    rifle are placed in an area of the house near what's, what

4    has all my things that I utilize when I'm collecting

12:49:22PM  5    evidence, such as, you know, I need zip ties to zip tie the

6    weapons to make sure they're, you know, locked open.  It has

7    more bags.  It has field testers for the drugs that we may

8    find.  So, anyway, I take the evidence and I put it all in

9    back which is in a safe location not near any suspects or

12:49:44PM 10    people who are in the house.

11         Q    Once you assume custody of that, does anybody

12    else have custody of it?

13         A    No.

14         Q    And in terms of this rifle and the ammunition

12:49:52PM 15    that is displayed in Government's Exhibit Number 21, did you

16    assume custody of that item from the scene?

17         A    Yes.

18         Q    And did you maintain custody of that item

19    while it was at the scene and the rest of the search was

12:50:05PM 20    being conducted?

21         A    Yes.

22         Q    Once, once -- there came a point in time when

23    the search was concluded?

24         A    Correct.

12:50:15PM 25         Q    Did you leave the location?

Bernabei - Direct - Moynihan

| | | |
|---|---|---|
| 1:05:29PM | 1 | **THE WITNESS:** That is accurate, yes. |
| | 2 | **THE COURT:** Thank you. |
| | 3 | Q Now, did you examine, did you examine the |
| | 4 | revolver while you were at the scene to identify it in any |
| 1:05:43PM | 5 | way? |
| | 6 | A Yes. |
| | 7 | Q And tell us what you remember about the |
| | 8 | description of the revolver. |
| | 9 | A It was a .357 Magnum revolver loaded with six |
| 1:05:55PM | 10 | rounds of ammunition. It had a serial number. |
| | 11 | Q Do you recall what that serial number is? |
| | 12 | A No. |
| | 13 | Q Would you report refresh your memory? |
| | 14 | A Yes. |
| 1:06:04PM | 15 | Q I'm going to show you what's been marked |
| | 16 | Government's Exhibit Number 101. Please take a look at that. |
| | 17 | That's your report, right? |
| | 18 | A Yes. |
| | 19 | Q Would that refresh your memory? |
| 1:06:14PM | 20 | A Yes. |
| | 21 | Q Please read it and look up. |
| | 22 | A (Indicating.) |
| | 23 | Q Is your recollection refreshed? |
| | 24 | A Yes. |
| 1:06:20PM | 25 | Q I'll take that back, thank you. What was the |

Bernabei - Direct - Moynihan

1:16:08PM  1   plastic ziplock baggies.

           2        Q    Are you able to say whether or not that was

           3   the jacket that was located or that your attention was

           4   directed to near the sofa?

1:16:22PM  5        A    Yes.

           6        Q    And was that the --

           7        A    Yes.

           8        Q    Okay.  I'm going to place on the visualizer

           9   what's been received as Government's Exhibit 104.  Please

1:16:31PM 10   take a look at that and tell us if you know what that

          11   depicts?

          12        A    That shows a sifter and a spoon.  And I

          13   believe they were found underneath the sofa.

          14        Q    That was my next question.  Your attention was

1:16:43PM 15   directed to those particular items, is that correct?

          16        A    Correct.

          17        Q    And you then photographed them?

          18        A    Yes.

          19        Q    You then collected them from that location?

1:16:50PM 20        A    Yes, I did.

          21        Q    Did you maintain custody of those items from

          22   the time you took them after the photograph and while they

          23   were at the scene?

          24        A    Yes.

1:17:01PM 25        Q    Did you remove those items from the scene?

US v. Swinton - 15-CR-6055

1:46:25PM  1    function here.  However, we will, because of these issues

2    that Mr. Swinton has raised with respect to the difference

3    between 5.56 rounds and .223 rounds confirm before he

4    testifies that, in fact, he is identifying some of the rounds

1:46:40PM  5    as 5.56 rounds and some of the two rounds as .223 rounds

6    consistent with his report and, again, make sure that he has

7    any tools with him that he needs to be able to distinguish

8    that.

9         **MR. SWINTON:**  Okay, Judge, if you might, can --

1:46:53PM 10    has, Mr. Moynihan, have you heard anything about the Touhy

11    issues?

12         **MR. MOYNIHAN:**  I haven't heard.  I've only been

13    copied in on communications from Mr. Tallon.  I understand

14    that he probably is the point person.  He's communicated with

1:47:07PM 15    Matthew Myerson (phonetic).  I did talk with Ms. Smith of my

16    office generally about this.

17         **THE COURT:**  Ms. Smith?

18         **MR. MOYNIHAN:**  Kathryn Smith who kind of runs the

19    Touhy issues but it's -- I mean....

1:47:20PM 20         **THE COURT:**  Have you heard anything, Mr. Tallon?

21         **MR. TALLON:**  My legal assistant sent me an email

22    this morning where Mr. Myerson, in response to the letter

23    that the Court and Mr. Moynihan and Ms. Hartford have, said,

24    I've communicated with Mr. Moynihan and, basically, I think

1:47:43PM 25    he's carrying the ball.  So, I mentioned this to Mr. Moynihan

US v. Swinton - 15-CR-6055

1:47:47PM 1  knowing that he's very busy, and maybe I just want to raise

2  it because we're coming on to Friday and I'm thinking we

3  should probably have some clarification from ATFE on this

4  one.

1:48:02PM 5       THE COURT:  Yeah, I'm going request, Mr. Moynihan,

6  that you consult with -- is it Mr. Myerson.

7       MR. TALLON:  Myerson, yes.

8       THE COURT:  And tomorrow morning give us an answer

9  one way or the other whether there's going to be an issue.

1:48:15PM 10       THE COURT:  Are you waiting to serve these

11  subpoenas until you get a response?

12       MR. SWINTON:  We're going to go forward with that

13  process and I've advised Special Agent Martineck and asked if

14  he could contact special agent Clark.  I've spoken with the

1:48:29PM 15  investigator that has been appointed on behalf of Mr. Swinton

16  and he will carry those subpoenas over to ATFE and serve them

17  and, hopefully, we'll then be able to clarify whether there's

18  any objection from ATF based on the Touhy regulations.

19       THE COURT:  Okay.  Well, Mr. Moynihan will also

1:48:47PM 20  communicate that to us tomorrow morning, right?

21       MR. MOYNIHAN:  I will look into it, Judge and --

22       MR. MOYNIHAN:  Let me put it this way:

23  Mr. Myerson's going to have to be here if you don't have an

24  answer tomorrow morning, okay?  I mean, I'll issue an order.

1:49:01PM 25  Is he local?

US v. Swinton - 15-CR-6055

| | | |
|---|---|---|
| 1:49:02PM | 1 | **MR. MOYNIHAN:**  No, he's actually in New York City. |
| | 2 | **THE COURT:**  Well, we'll get somebody here if you're |
| | 3 | not able to get an answer, okay, because what I don't want to |
| | 4 | have happening is so-called red tape -- |
| 1:49:15PM | 5 | **MR. MOYNIHAN:**  Understood. |
| | 6 | **THE COURT:**  -- delaying things here, especially |
| | 7 | these two witnesses were on the government's witness list. |
| | 8 | **MR. MOYNIHAN:**  Sure. |
| | 9 | **THE COURT:**  And presumably there wouldn't have been |
| 1:49:25PM | 10 | any issue if the government was calling them.  So I wouldn't |
| | 11 | expect there be an issue if Mr. Swinton wants to call them, |
| | 12 | either. |
| | 13 | **MR. TALLON:**  Thank you, Judge. |
| | 14 | **THE COURT:**  You're welcome.  Let met just make |
| 1:49:38PM | 15 | sure.  So we'll stop at 1 o'clock tomorrow.  We'll start at 9 |
| | 16 | o'clock.  I want to -- it seems as though the government's |
| | 17 | making pretty good progress here, right. |
| | 18 | **MR. MOYNIHAN:**  I think so, Judge.  I think we'll |
| | 19 | probably finish Monday. |
| 1:49:50PM | 20 | **THE COURT:**  That's what I was thinking, as well, |
| | 21 | and, so, in total how many witnesses -- you don't have to |
| | 22 | tell me right now. |
| | 23 | **MR. SWINTON:**  Okay. |
| | 24 | **THE COURT:**  But how many witnesses, if you want to |
| 1:50:00PM | 25 | think about it overnight, Mr. Swinton, but I think maybe be |

US v. Swinton - 15-CR-6055

1:50:05PM 1   able to give me some kind of ballpark estimate as to how long

2   you think your case is going to be.  I think you probably

3   have to be ready to go starting Monday at some point.  And

4   then, I don't know, do you have an estimate at this point as

1:50:22PM 5   to how long you think your case will be.

6          **MR. SWINTON:**  Judge, I don't see it being over a

7   day, day and a half.

8          **THE COURT:**  So it could be that we'll wrap up with

9   all the proof by noon on Wednesday.

1:50:36PM 10         **MR. SWINTON:**  Yes.

11         **THE COURT:**  And we won't need a full day on

12  Wednesday and then we could do our charge conference

13  Wednesday afternoon and do closings on Thursday.

14         **MR. TALLON:**  Judge, Mr. Swinton says I can address

1:50:53PM 15  the Court on this.  We have served a number of civilian and

16  law enforcement witnesses as of now.  They are on standby.  I

17  have had direct communication with many of them and what I'm

18  anticipating is, because he can't do it, is get a sense of

19  when we're going to do the defense case in chief, let those

1:51:22PM 20  folks know, law enforcement and otherwise, and then have

21  Investigator Gerber or Siena who have been appointed more or

22  less take care of -- shepherding these folks into this

23  courtroom and babysitting them, if that's the word for them,

24  until they are actually called as a witness in the defense

1:51:43PM 25  case in chief.  That's what I envision.  So, the real issue

429

US v. Swinton - 15-CR-6055

| 1:51:47PM | 1 | is the timing.  When do I start asking them to be here and |
| | 2 | we'll have clarification, I think, tomorrow. |
| | 3 | **THE COURT:**  I agree, I think after we finish up |
| | 4 | tomorrow, we'll know, in all likelihood, when the government |
| 1:51:58PM | 5 | will rest and when the defense will need to be ready to go. |
| | 6 | **MR. TALLON:**  Thank you. |
| | 7 | **MR. SWINTON:**  Thank you. |
| | 8 | **THE COURT:**  All right.  Anything else from the |
| | 9 | government that we need to deal with? |
| 1:52:07PM | 10 | **MR. MOYNIHAN:**  No, Judge. |
| | 11 | **THE COURT:**  Anything else, Mr. Swinton, that we |
| | 12 | need to deal with today? |
| | 13 | **MR. SWINTON:**  No, Judge. |
| | 14 | **THE COURT:**  All right.  Everybody have a good |
| 1:52:14PM | 15 | afternoon and we'll see you tomorrow. |
| | 16 | **MR. MOYNIHAN:**  Thank you. |
| | 17 | **THE COURT:**  Thank you. |
| | 18 | (WHEREUPON, proceedings were adjourned.) |
| | 19 | |
| 1:52:24PM | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |